NORTHERN PACIFIC R. R. Co., appellant, *v.* SHIMMELL, respondent.

NORTHERN PACIFIC RAILROAD COMPANY — *Franchise of cannot be impaired.*— The franchise of the Northern Pacific Railroad was given by act of congress, and the road made a military and post road for the benefit of the government of the United States, and whatever is necessary and useful in operating the road belongs to and goes with the franchise, and no law of this territory, or any other jurisdiction less than that which created it, can in any manner rightfully invade or impair the privileges and immunities thus conferred.

SAME — *Office safe cannot be taken on execution.*— If an office safe at a depot on said road, in which the agent of the company deposits and keeps his daily receipts of money and valuable papers, is useful and facilitates the operation of the road, it cannot be seized on execution against the company. The finding of the jury, that the safe in question was not necessary or useful for such purpose, reviewed, and held contrary to the evidence.

*Appeal from First District, Custer County.*

SANDERS, CULLEN & SANDERS, for the appellant.

WADE, C. J.   The only questions presented by this appeal are the following, viz.:

1.  Does the evidence support the verdict and justify it?

2.  Can the property of the Northern Pacific Railroad Company in the territory of Montana, necessary, convenient and usual for running and operating said road, be lawfully seized and sold on execution to satisfy a judgment against said company?

The property in question is a certain office safe, known as a Diebold combination safe, which was seized on an execution issued out of the probate court of Yellowstone county, and taken from the plaintiff's depot and station, at the town of Billings, in said county, and sold at auction, whereby the defendant claims title and right of possession. There was a verdict and judgment for defendant, and the plaintiff appeals.

As to the question whether the safe in controversy was a part of the usual, necessary and convenient equipment of the Northern Pacific Railroad Company, to enable it to operate its road, at the time it was seized on execution, the testimony showed that the safe was in use by the plaintiff in and about its business as a railroad company, in the depot at Billings, and was the only safe there; that it was in daily use by the company in its railroad business thereat, in keeping therein the moneys received by the company, which amounted to from two hundred to five thousand dollars per day, and in the preservation of its books of account of said railroad business at said station; that since the safe had been taken away, the agent at Billings, in consequence of its seizure, had been compelled to use safes of other parties, by their consent, or else carry said moneys on his person, and that in the opinion of said agent said safe was, under the circumstances, a necessary part of the equipment and furniture of the plaintiff at said depot. It also appeared in evidence that there was a bank in said town, with a vault, wherein plaintiff was permitted to deposit its moneys, books and papers, and that the plaintiff

had procured no other safe since the one in question was seized.

The foregoing was all the testimony at the trial concerning the questions proposed.

Upon this state of facts the court instructed the jury as follows: " If it has been proven to your satisfaction, by a preponderance of evidence, that this safe was an office safe — was in use at the depot at this station — that it was a usual and necessary part of the furniture in such office, in the preservation and safe-keeping of the moneys, books of account, and valuable papers used in the transaction of the business of the plaintiff at such depot, and essential to the proper and safe conduct of such business there, then you should find for the plaintiff.

" In this case the question arises, whether the property can be seized under execution for the payment of the debts of the company, inasmuch as it is held to be essential to the ordinary and convenient use of the railroad company. There are certain classes of property belonging to railroad companies not subject to seizure and sale upon execution, such as their tracks, rolling stock, offices, depots, shops and machinery, the use of which is essential to the opertaion of the road; the reason for this being that such seizure and sale would result in the destruction of the property.

" There are certain other classes of property which may be seized and sold upon execution against a railroad company, such as lands and personal property not used in the running and operation of the road. Such property is always subject to execution, and it is the duty of the sheriff to search for this kind of property upon which to levy. An office safe is a necessary part of the furniture in a town where the business is important and extensive, and where the receipts of the railroad company are of so large an amount, and the books required to keep the accounts of the office containing valuable memoranda, as that it would be proper and prudent to preserve them from depredation or destruction by the use of a safe.

" And in this case, if you find from the evidence the business here so extensive, the receipts so valuable, as that a prudent man would require the use of a safe, then you should find for the plaintiff."

These instructions correctly stated the law, and were applicable to the facts in the case. Rorer, in his work on railroads, vol. 2, p. 901, says: " The corporate franchise, rights and property of a railroad corporation incidental thereto cannot at common law be seized or sold upon execution at law against the company; nor can the appurtenances, easements, appliances, or works used for the practical operation of the road, be levied upon or sold at law upon execution separate from the franchise any more, or more legally, than the whole can be sold together. Such sale would impair its value and impede its use by the public;" citing the following authorities: *Gue* v. *Tide-water Canal Co.* 24 How. 263; Rorer on Judicial Sales, sec. 1068; *Coe* v. *Columbus, P. & I. R. R. Co.* 10 Ohio St. 372; *Western Pa. R. R. Co.* v. *Johnston,* 59 Pa. St. 290; *Youngman* v. *Elmira & W. R. R. Co.* 65 id. 278; *Bayard's Appeal,* 72 id. 453; *Thomas* v. *Armstrong,* 7 Cal. 286; *Stewart* v. *Jones,* 40 Mo. 140; *Hatcher* v. *Toledo, W. & W. R. R. Co.* 62 Ill. 477; *James* v. *P. & G. R. R. Co.* 8 Mich. 91; *Ammant* v. *New Alexandria & P. T. Co.* 13 Serg. & R. 212; *Plymouth R. R. Co.* v. *Colwell,* 39 Pa. St. 337; Rorer on Judicial Sales, sec. 1069.

In *Gue* v. *Tide-water Canal Co.*, Chief Justice Taney says: " It would be against the principles of equity to allow a single creditor to destroy a fund to which other creditors had a right to look for payment, and equally against the principles of equity to permit him to destroy the value of the property of the stockholders, by dissevering from the franchise property which was essential to its useful existence."

In Herman on Executions, 551, it is said the rule at common law is, that the franchises and corporate rights of a corporation, and the means vested in them, which are neces-

sary to the existence and maintenance of the object for which they are created, are incapable of being transferred and granted away by any adverse process against them.

The plaintiff has the right to operate its road through the territory of Montana, and to have all the works and appliances essential to its useful existence as a railroad. This franchise was given by act of congress, and the road made a military and post road for the benefit of the government of the United States, and whatever is necessary and useful in operating the road belongs to and goes with the franchise, and no law of the territory, or any other jurisdiction less than that which created it, can in any manner rightfully invade or impair the privileges and immunities thus conferred.

If an office safe at a depot, in which the agent deposits and keeps his daily receipts and valuable papers, is useful and facilitates the successful operation of the road, it could no more be seized on execution than could a section of the rails, or road-bed, or a water-tank. These things are incident to the franchise and cannot be disturbed. They are the means by which the franchise is exercised. They are the necessary instruments of its use.

The charter of the plaintiff authorizes and empowers it to lay out, locate, construct, furnish, maintain and enjoy a continuous railroad line, with the appurtenances, from Lake Superior to Puget's sound, and if an office safe at any depot on said road is useful and convenient to the plaintiff in the enjoyment of said franchise, then the same is protected from seizure on execution. This franchise or right to maintain and enjoy the road is not limited and restricted to what is barely necessary for that purpose, but extends to what is appropriate and useful, and actually in use.

Railroad companies can be made to pay their debts, but the remedy is not by seizing and selling property that would destroy the road, and thereby prevent it earning money for its creditors.

The testimony shows, without question or contradiction,

that this safe was an office safe, used by plaintiff in its depot at Billings station, in the regular daily business of the road, and that the same was a necessary part of the equipment and furniture of said depot for the purposes of such business. The court instructed the jury that if it had been proven by a preponderance of the evidence that the safe in question was an office safe, used in the depot at Billings, and that it was a usual and necessary part of the furniture in such office for the safe-keeping of moneys, books of account, and valuable papers, used in the transaction of plaintiff's business, and essential to the proper and safe conduct of such business, then they should find for the plaintiff.

The jury, by their verdict for the defendant, must have found from the evidence that the safe was subject to sale on execution, for the reason that the same was not a usual and necessary part of the equipment and furniture of said depot, and essential to the proper and safe conduct of the business of the road. There is no evidence to support such a finding or verdict. The verdict is a direct contradiction of all the testimony in the case.

The agent of the plaintiff testified that the safe, considering the business at the Billings depot, was a necessary part of the equipment and furniture of the depot for the purposes of such business, and there was no evidence to contradict the agent, or to call in question his statement as to the necessities of plaintiff's business at that point. But the jury, in answer to a special issue submitted, say that the safe in controversy was not necessary in carrying on the business of the company. In this they contradicted the only witness on the subject, and make a special finding in the very face of all the testimony on the question submitted.

Appellate courts are slow to disturb the verdict of a jury, and will not do so if there is evidence to support the verdict. *Ming* v. *Truett*, 1 Mont. 328. But if the verdict is a flat contradiction of all the evidence in the case, and there is nothing to support it, it would be a reproach to the law,

and to those who administer it, to permit such a verdict to stand.

Judgment is reversed, and cause remanded for a new trial.

*Judgment reversed.*